**This order is SIGNED.**

**Dated: October 27, 2025**



**PEGGY HUNT**
**U.S. Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Case No. 24-22514 |
| MIKE G. CARTER and NICHOLE CARTER, | Chapter 13 |
| Debtors. | Honorable Peggy Hunt |

### MEMORANDUM OPINION

The question presented is whether the Debtors may modify their confirmed Chapter 13 plan under § 1329 of the Bankruptcy Code[1] to surrender a vehicle subject to a lien that, at the time of confirmation, they planned to retain and pay for pursuant to the parties' prepetition contracts. This modification is permitted under § 1329(a)(1) – (a)(3) and complies with § 1329(b).

**I.     JURISDICTION AND VENUE**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 157(a) and 1334 and the Order of Reference of the United States District Court for the District of Utah at DUCiv R 83-6.1. Pursuant to 28 U.S.C. § 157(b), the Court may hear and determine this contested matter by entry of a final order because it is a "core proceeding." It arises under the Bankruptcy

---

[1] 11 U.S.C. § 101 *et seq*. Unless stated otherwise, statutory references are to title 11 of the United States Code.

Code and arises in this case, and it is included as a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (L). Venue of this case in this district is proper pursuant to 28 U.S.C. § 1408.

## II. FACTS

The Debtors owned a Kia Sorento when they filed their petition seeking relief under Chapter 13 of the Bankruptcy Code. Goldenwest Credit Union (the "Credit Union"), the entity that financed the purchase of the vehicle, filed a Proof of Claim in the Debtors' case asserting a partially secured and partially unsecured claim based on its interest in and valuation of the Kia.[2] The Debtors did not object to the Credit Union's Proof of Claim.

The Debtors' treatment of the Credit Union's claim was included in the "Nonstandard Plan Provisions" of their proposed Chapter 13 Plan.[3] The Plan stated the Credit Union would be paid "directly" – in other words, the Chapter 13 Trustee would not make distributions to the Credit Union on account of its claim because the Debtors were paying the Credit Union "outside" of the Plan pursuant to the parties' prepetition contracts.[4] General unsecured creditors were to receive no distributions under the Plan and those claims were to be discharged at the end of the Plan's term pursuant to § 1328 if the Debtors completed their payments to the Trustee.[5]

The Credit Union did not object to confirmation and the Debtors' proposed Plan was confirmed.[6] The order confirming the Plan stated in relevant part that the Credit Union's claim

---

[2] Claims Dkt. No. 5-1.
[3] *See* Fed. R. Bankr. P. 3015(c)(2); Local Rule 2083-2(f)(3).
[4] Dkt. No. 4 (Chapter 13 Plan (hereinafter, the "Plan")), ¶¶ 1.3, 8.1(3); *see* discussion *infra* at III(1).
[5] Plan, ¶ 5.1.
[6] Dkt. No. 27 (Order Confirming Debtors Chapter 13 Plan Following Contested Confirmation Hearing (hereinafter, the "Conf. Order")).

would be paid directly by the Debtors "outside the Plan, pursuant to the conditions listed in Local Rule 2083-2(f)(3) and Local Rule 2083-2(i)(4)."[7]

Shortly after the confirmation order was entered, the Debtors filed a motion pursuant to § 1329 seeking to modify the Plan (the "Modification Motion").[8] The Debtors determined they could not afford the Kia and wanted to "surrender" the vehicle to the Credit Union to liquidate in partial satisfaction of its claim. They planned to stop making payments to the Credit Union and the Credit Union could amend its Proof of Claim to adjust the amount of its general unsecured claim if the Kia was liquidated for less than the Credit Union's total claim against the Debtors.[9]

The Trustee objected to the Modification Motion.[10] The Credit Union did not. After reviewing the pleadings and hearing arguments, the Court issued an *Order* granting the Modification Motion.[11] This *Memorandum Opinion* supplements that ruling.

### III. ANALYSIS

The issue before the Court is whether the confirmed Plan may be modified under § 1329 to allow the Debtors to surrender the Kia to the Credit Union to sell, with liquidation proceeds

---

[7] Conf. Order, ¶ 16(a). Local Rule 2083-2(f)(3) involves required nonstandard plan provisions. Subsection (i)(4) states that when a secured creditor is paid directly –

> the following conditions apply: (A) the debtor will pay the claim without any modification to the terms of the contract; (B) upon entry of the [confirmation order], the automatic stay . . . and co-debtor stay . . . are terminated . . . ; (C) the claim will not be discharged; and (D) neither the Court nor the trustee will monitor the debtor's performance . . . .

*See* discussion *infra* at n.38.
[8] Dkt. No. 37 (Motion to Modify Plan and for Attorney Fees (hereinafter, the "Mod. Mot.")); *see* Dkt. Nos. 38 and 40 (Notices of Hearing) and 42 (Memorandum in Support (hereinafter, the "Dr. Memo.")). After the confirmation hearing but prior to entry of the Confirmation Order, the Debtors filed a *Notice of Preconfirmation Modification to Chapter 13 Plan*, Dkt. No. 18, stating they were modifying the Plan prior to confirmation pursuant to § 1323 to surrender the Kia. They withdrew this Notice and filed the Modification Motion after the Confirmation Order was entered. *See* Dr. Memo., at 1.
[9] Mod. Mot., ¶ 2; Dr. Memo., ¶ 6.
[10] Dkt. No. 39. The Trustee also argued that the monthly plan payments must increase to render the Plan feasible and that a fee application was required prior to the allowance of any attorney's fees. The feasibility issue was not before the Court because the Debtors agreed to the payment amount. *See* Dkt. No. 51 (Stipulated Order). Debtors' counsel filed an application and the fees were allowed. *See* Dkt. Nos. 46, 47, 51.
[11] Dkt. No. 46 (Order).

applied to its claim, and the deficiency claim treated as a general unsecured claim. This modification is permitted under § 1329.

Section 1329(a) states that a plan may be modified "[a]t any time after confirmation of the plan but before completion of payments under such plan . . . upon request of the debtor, the trustee, or the holder of an allowed unsecured claim . . ." provided the proposed modification is of the type described in subsections (a)(1), (a)(2), (a)(3) or (a)(4) of that section.[12] Here, modification of the Debtors' confirmed Plan is permissible because it is within the express terms of § 1329(a)(3) and, alternatively, is permitted under the plain language of § 1329(a)(1) and (a)(2).[13] These subsections authorize modifications that amend the treatment of an allowed secured claim provided for in a confirmed plan. Case law to the contrary is unpersuasive.

   1. **The Debtors' Plan May Be Modified Under § 1329(a)(3) Because the Amount of the Distribution to the Credit Union Is Altered to Take Account of the Surrendered Vehicle.**

Section 1329(a)(3) states that a plan may be modified to "alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan. . . ." This language is very broad.

The word "creditor" is defined in § 101(10)(A) as one with a prepetition claim, and the creditor may hold a secured or unsecured claim because, under § 101(5)(A), the word "claim" means any "right to payment, whether or not such right is . . . secured[] or unsecured." The only limitation on creditors who may be affected under § 1329(a)(3) is that their claim be "provided for by the plan. . . ." There are no conditions on how the claim is "provided for by the plan" or on

---

[12] *See* Fed. R. Bankr. P. 2002(a)(5), 3015(h) (governing procedures and notice of a modification).
[13] *See, e.g., United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240-41 (1989) (court must look to the language of the statute itself and need not look beyond its plain language).

the type of "distribution" to be altered. Thus, § 1329(a)(3) applies if a claim is in any way dealt with in the plan, including being paid through or outside of the plan, and the distributions may be ones made by a trustee or a debtor.[14] The only restriction is that the amount of a distribution may only be altered "to the extent necessary to take account" of "any payment" on a secured and/or unsecured claim "other than under the plan." These phrases plainly encompass payments on a claim resulting from a secured creditor's liquidation of its collateral as the liquidation is accomplished outside the authority of the confirmed plan.[15]

The Debtors' proposal here to change the treatment of the Credit Union's allowed claim is squarely within § 1329(a)(3). Paragraph 8.1(3) of the Plan "provided for" the Credit Union's claim, stating the Debtors were electing to pay the Credit Union directly for the Kia. The Debtors then determined they could not afford the Kia and wanted to surrender it to the Credit Union to be sold and the liquidation proceeds applied to the claim. In other words, "to take account of [this] payment of [the Credit Union's] claim" made "other than under the [P]lan," the Debtors wanted to "alter the amount of the distribution" to the Credit Union to the amount of liquidation proceeds, plus any claim that was asserted or could be asserted as a general unsecured claim. Thus, the modification is one allowed under the plain language of § 1329(a)(3).

---

[14] Section 1325(a)(5)(A) states that a plan must be confirmed if a holder of a secured claim provided for by the plan consents. In the case of a direct payment – not invoking cram down and discharge, the creditor is consenting to such treatment. The fact that the claim that is classified in the plan is paid directly does not mean it is not provided for by the plan.

[15] *See In re Kinney*, 5 F.4th 1136, 1142 (10th Cir. 2021) ("[A] payment 'under' a bankruptcy plan" is one "'subject to . . . or under the authority of' the plan.") (quoting *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 39-41 (2008)); *see also In re Zieder*, 263 B.R. 114, 118 (Bankr. D. Ariz. 2001) (surrender of collateral is payment other than under plan).

## 2. The Debtors' Plan May Be Modified Under § 1329(a)(1) and (a)(2) Because the Debtors Are Only Changing the Amount and Timing of Payments of Claims of a Particular Class.

The Debtors' modification of their confirmed Plan also is permissible under the plain terms of § 1329(a)(1) and (a)(2). These subsections state a confirmed plan may be modified to "increase or reduce the amount of payments on claims of a particular class provided for by the plan"[16] or to "extend or reduce the time for such payments."[17] Like § 1329(a)(3), subsections (a)(1) and (a)(2) are expansive in scope.

Subsection (a)(1) refers to "claims" and, as discussed above, this word includes secured and unsecured claims under § 101(5)(A). The word "payments" is not qualified and applies to payments by a debtor directly, by the trustee under a plan or even payments resulting from collateral liquidation.[18] The "particular class" need only be "provided for by the plan" and is otherwise unrestricted – it could be a secured creditor class or a general unsecured creditor class. Generally, each secured creditor is in a single class in a Chapter 13 plan so that the debtor may afford treatment that is unique to its collateral interest.

Here, the Credit Union was a secured creditor separately classified to receive payments directly from the Debtors that would fully pay its secured and unsecured claim. As modified, there is a reduction in the amount of payments to the Credit Union's secured class because that amount will be reduced to the value of the Kia at liquidation.[19] The time for such payments is also reduced because the Credit Union will be paid when the Kia is liquidated, instead of in

---

[16] § 1329(a)(1).
[17] § 1329(a)(2).
[18] *See, e.g.*, *In re Fayson*, 573 B.R. 531, 535 (Bankr. D. Del. 2017) ("Surrender of collateral is a form of payment under the Code.") (citing *Bank One, N.A. v. Leuellen*, 322 B.R. 648, 654 (S.D. Ind. 2005)).
[19] *See In re Jones*, 538 B.R. 844, 849 (Bankr. W.D. Okla. 2015) (holding that because "each secured creditor constitutes a 'class', the reduction of a secured claim to an unsecured one by surrendering the collateral falls squarely under § 1329(a)(1) because the creditor's secured claim is reduced to zero . . .").

installments over the remaining life of the parties' contracts.[20] Thus, the Debtors' modification is permitted under § 1329(a)(1) and (a)(2).

### 3. *In re Nolan* Does Not Change the Court's Conclusion.

In *In re Nolan*[21] the United States Court of Appeals for the Sixth Circuit concluded that modifying a confirmed plan to surrender a vehicle is not allowable and several lower courts outside of the Sixth Circuit have followed this case.[22] The Court respectfully disagrees with *Nolan* based on the plain language of § 1329(a)(1) – (a)(3) discussed above. Even though it is not binding, *Nolan* merits discussion because the reasoning in that case does not consider how claims are defined and allowed in bankruptcy and the treatment of allowed claims in a Chapter 13 plan. Examination of these concepts supports the Court's decision in this case.

The conclusion in *Nolan* was based primarily on the premise that § 1329 does not mention and therefore does not allow a debtor to "reclassify a previously allowed secured claim"[23] or to "add a claim to the class of unsecured creditors[,]"[24] but only to change the amount and timing of payments under subsection (a)(1) (subsections (a)(2) and (a)(3) of § 1329 were not considered). According to the court, the proposed modification would "bifurcate a claim that has already been classified as fully secured into a secured claim as measured by the

---

[20] In many cases the amount of payments to the unsecured creditor class will also be reduced because the creditor would have been paid outside of the Plan and modification requires the creditor's allowed unsecured claim to be paid through the plan. The general unsecured creditor class was not projected to receive anything in this case and, therefore, this analysis does not apply.
[21] 232 F.3d 528 (6th Cir. 2000).
[22] *See, e.g.*, *In re Ramos*, 540 B.R. 580, 592 n.33 (Bankr. N.D. Tex. 2015) (collecting cases); *In re Arguin*, 345 B.R. 876 (Bankr. N.D. Ill. 2006). *Nolan* was followed in an unpublished order entered in this district in 2003. *In re Blansett*, Case No. 00-21397 (Thurman, J.) (Creditor did not file a proof of claim and debtors requested modification of confirmed plan to surrender a vehicle they initially planned to retain "in full satisfaction" of the creditor's secured claim). To the extent not factually distinguishable from this case, the Court respectfully disagrees with the order in *Blansett*.
[23] 232 F.3d at 532.
[24] *Id.*

collateral's depreciated value [upon surrender] and an unsecured claim as measured by any unpaid deficiency."[25]

The Sixth Circuit is correct that § 1329(a) does not mention "reclassification," "addition" or "bifurcation" of claims, but this wording is not required. A modification to surrender a vehicle does not reclassify or bifurcate a "fully secured" claim. There is no modification of the claim at all. It is only the *treatment* of the allowed claim that is impacted and § 1329(a)(1) – (a)(3) allow modifications that alter the treatment of a claim.

Again, under § 101(5)(A), the word "claim" means "any right to payment whether or not such right is . . . secured or unsecured." A creditor may assert its claim by filing a proof of claim under § 501 and Federal Rule of Bankruptcy Procedure 3002. Absent objection, the claim asserted in the proof of claim is "deemed allowed" under § 502(a). If an objection is filed, the court determines the amount of the "allowed" claim under § 502(b). The "allowed claim" of a creditor with an interest in a vehicle is valued under § 506(a)(1)[26] which states in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim . . . .

Thus, under § 506(a)(1) the claim of a creditor is "divided into secured and unsecured portions, with the secured portion of the claim limited to the value of the collateral."[27]

In Chapter 13 cases, the secured and unsecured portions of the allowed claim are provided for in the debtor's plan. Confirmation of the plan occurs if the provisions of § 1325 are

---

[25] *Id*. at 533.
[26] *In re Ballard*, 526 F.3d 634, 641 (10th Cir. 2008) (Section 506(a) "provides a method for the judicial valuation of an allowed secured claim . . .") (citing *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992) for its holding that the meaning of "allowed secured claim" in § 506(a) does not determine the meaning of "allowed secured claim" in § 506(d)).
[27] *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 961 (1997) (citing *Ron Pair Enters., Inc.*, 489 U.S. at 238-39); *Ballard*, 526 F.3d at 637 ("[U]nder § 506(a), a claim secured by a lien is separated, or bifurcated, into a secured portion reflecting the value of the property and an unsecured portion reflecting the remaining debt or deficiency.").

met. Subsection (a)(5) of that section sets forth the required treatment of a creditor's "allowed secured claim" – *i.e.,* the portion of the claim "that is allowed under § 502 and secured by a lien under state law" as valued under § 506(a)(1).[28] This treatment is based on satisfying one of three conditions set forth in § 1325(a)(5): (i) the secured creditor consents to the treatment of its claim (like this case) as allowed under § 1325(a)(5)(A); (ii) the debtor keeps the collateral and makes payments on the secured portion of the claim required under § 1329(a)(2)(B) with the unsecured portion of the claim being subject to "cram down" and paid as part of the general unsecured class of the plan; or (iii) the debtor surrenders the vehicle to the creditor as permitted under § 1325(a)(5)(C). There is no required plan treatment of the unsecured portion of the allowed claim, but this portion of the claim exists and is treated based on plan provisions that conform with §§ 507, 1322, 1325 and 1326.

Accordingly, contrary to *Nolan*, modifying a confirmed plan to allow a collateral surrender does not result in a "reclassification" or "bifurcation" of an allowed secured claim or the "addition" of an unsecured claim. It merely modifies the treatment under the confirmed plan of the existing secured and unsecured portions of the creditor's allowed claim. This conclusion is reinforced by the "hanging paragraph" at the end of § 1325(a)(5) and the decision of the United States Court of Appeals for the Tenth Circuit in *In re Ballard*.[29]

The hanging paragraph in § 1325(a)(5), which was added to the Bankruptcy Code in 2005,[30] states that if the debtor purchased and financed a vehicle within 910 days of the petition date, the creditor's claim is not valued under § 506. Thus, when the debtor elects to retain

---

[28] *Ballard*, 526 F.3d at 641; *see Rash*, 520 U.S. at 957 ("The value of the allowed secured claim [referred to in § 1325(a)(5)] is governed by § 506(a) of the Code.").
[29] 526 F.3d 634.
[30] *See* The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 199 Stat. 23 § 318 (April 20, 2005).

collateral and the creditor's secured claim is treated under § 1325(a)(5)(B), the hanging paragraph prohibits a "cram down" of the unsecured portion of the claim; rather, the debtor must pay the creditor in full under the terms of the parties' prepetition contracts. By excluding § 506 valuation of so-called "910 claims," Congress recognized that that section applies to cases, such as this case, where the hanging paragraph does not apply – thus requiring bifurcation of a secured claim into secured and unsecured components.[31]

*Ballard* takes this analysis one step further holding that a creditor whose claim is secured by a vehicle will always have an allowed claim that is bifurcated into secured and unsecured components even when § 506 is inapplicable because of the hanging paragraph. That case involved the confirmation of chapter 13 plans where the debtors proposed to surrender vehicles subject to 910 claims. Lower courts held that the vehicle surrenders satisfied the lenders' claims in full because § 506 did not apply to bifurcate the claims and federal law does not afford secured creditors deficiency claims. The Tenth Circuit reversed, holding that the creditors were entitled to the value of their collateral obtained upon surrender, plus any deficiency claims allowed under state law.[32] This case therefore establishes that a secured claim is bifurcated with secured and unsecured components even if not valued under § 506(a)(1).

In this case, the Credit Union's uncontested Proof of Claim, allowed under § 502(a), asserted a partially secured and partially unsecured claim based on its valuation of the Kia under § 506(a)(1). As confirmed, the Plan provided that the Debtors would pay the Credit Union's allowed claim (both the secured and unsecured portions) in full. The modification provided that

---

[31] *City & Cnty. of San Francisco, California v. Env't Prot. Agency*, 604 U.S. 334, 344 (2025) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citations and internal quotations omitted).
[32] 526 F.3d at 640-41.

the secured portion of the allowed claim would be satisfied by surrender of the Kia, and the unsecured portion would be treated in the class of general unsecured creditors. This changed the treatment of the Credit Union's allowed claim that was already "bifurcated" and did not "reclassify" it. Surrender of the Kia in fact is an acknowledgment of the Credit Union's allowed secured claim. Likewise, there was no "addition" of an unsecured claim – that claim was part of the Credit Union's allowed claim that at confirmation was to have been paid in full. The Debtors' modification recognized the allowed unsecured claim by affording the Credit Union an opportunity to amend its Proof of Claim after the sale of the Kia.

This same line of reasoning discredits the theory in *Nolan* that it is unfair to allow a surrender modification because § 1329(a) only allows the trustee, a debtor or an unsecured creditor, not a secured creditor, to seek a post-confirmation plan modification.[33] Creditors with interests in vehicles likely will always have an allowed claim with an unsecured component and, therefore, they are unsecured creditors who, in addition to the trustee and the debtor, may seek a modification of a confirmed plan under § 1329(a).

*Nolan* also takes issue with a post-confirmation reduction of the amount paid on an allowed secured claim, stating that the modification violates § 1325(a)(5)(B), "which mandates that a secured claim is fixed in amount and status and must be paid in full once it has been allowed."[34] No authority exists in the Bankruptcy Code, including under § 1325(a)(5), to support that conclusion. In fact, for the reasons set forth above, § 1329(a) expressly allows modification of a plan to alter payments and distributions to a secured creditor. Furthermore, § 502(j) specifically permits reconsideration of an allowed secured claim for "cause" and "according to

---

[33] 232 F.3d at 534.
[34] *Id*. at 533.

the equities of the case."[35] Collateral surrender presents "cause" for reconsideration because when the collateral is liquidated by the creditor, it no longer has an allowed secured claim as a matter of law and the amount of its unsecured claim must be revalued. Also, considering the equities of the case compels reconsideration in most cases. As discussed below, debtors often must reassess their finances over a three-to-five-year plan term and they should be encouraged to use good judgment and do so if it enhances their ability to complete a confirmed plan. Thus, the reliance in *Nolan* on permanence of an allowed secured claim is without merit.

The inability to modify treatment of a secured claim relied on in *Nolan* is often connected to denial of modifications based on the res judicata effect of a confirmed plan under § 1327. This position does not recognize that (i) § 1329 itself allows a confirmed plan to be modified despite its binding effect; (ii) pre-confirmation plan modifications under § 1323(c), and made applicable to post-confirmation modifications by § 1329(b), expressly states that a plan may be modified to affect a secured creditor's rights; and (iii) § 502(j) creates an exception to the res judicata effect of a confirmed plan.

For all these reasons, the Court respectfully declines to follow *Nolan*. This conclusion is consistent with more recent case law rejecting *Nolan* for a variety of reasons, including those stated by the Court here,[36] as well as views set forth in leading treatises.[37]

---

[35] *See* Fed. R. Bankr. P. 3008; *see also* Fed. R. Bankr. P. 3008 advisory committee's note to 1983 amendment ("After reconsideration, the court may allow or disallow the claim, increase or decrease the amount of a prior allowance, accord the claim a priority different from that originally assigned it, or enter any other appropriate order."); Fed. R. Bankr. P. 9024 (making Fed. R. Civ. P. 60(b) applicable).

[36] *See, e.g., In re Cooke*, 655 B.R. 181, 190-93 (Bankr. N.D. Ill. 2023) (comprehensive analysis rejecting *Nolan* based on full reading of the Bankruptcy Code); *In re Fayson*, 573 B.R. 531, 533 (Bankr. D. Del. 2017) (collecting cases); *In re Rodriquez*, 430 B.R. 694, 696 (Bankr. M.D. Fla. 2010) (permitting modification of plan that required direct payments to creditors and collecting cases); *see also In re Bain*, No. 3:23-bk-03205, 2025 WL 1748157, at *2 n.5 (Bankr. M.D. Tenn. June 24, 2025) (distinguishing but collecting cases refusing to follow *Nolan*).

[37] *See* 8 COLLIER ON BANKRUPTCY, ¶ 1329.04[1] (Richard Levin & Henry J. Sommer eds., 16th ed. 2025) (Courts declining to follow *Nolan* are based on "a more careful and complete reading of the Code."); Keith M. Lundin, LUNDIN ON CHAPTER 13, § 127.7, at ¶ 11, LundinOnChapter13.com (last visited Oct. 27, 2025) ("To preclude a Chapter 13 debtor from modifying the plan to reflect that a creditor repossessed its collateral and is thus no longer the holder of an allowable secured claim turns the Code on its head.").

### 4. The Debtors' Proposed Modification Comports with the Fairness Requirements of § 1329(b).

The Trustee argued that modification of the Debtors' confirmed Plan was not fair to the Credit Union because the Credit Union's unpaid unsecured claim that was to have been paid in full will now be crammed down and discharged. Specifically, as confirmed, the Debtors planned to keep the Kia and pay the Credit Union in full directly under the parties' prepetition contracts. Cram down of the unsecured component of the allowed claim and discharge of any unpaid portion of that claim was not allowed.[38]

Although treatment of the Credit Union's claim, as argued by the Trustee, is altered by a surrender modification, for the reasons discussed the modification is permitted under § 1329(a)(1) – (a)(3) and those terms control.[39] Furthermore, the modification is not prohibited under § 1329(b) which tempers post-confirmation modifications based on, among other things, fairness. That section states that a modification allowed under § 1329(a) must be permissible under §§ 1322(a) and (b), 1323(c) and 1325(a). The Debtors' proposed modification is permissible under these sections.

The modification does not run afoul of allowable plan provisions set forth in § 1322(a) and (b), and subsection (b)(8) in fact provides that a plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor[.]"[40] No one alleges that the Debtors are acting in bad faith which, if proven, would ban the modification

---

[38] *See supra* n.7 (quoting Local Rule 2083-2(i)). This Local Rule adopts the holding in *In re Case*, 11 B.R. 843 (Bankr. D. Utah 1981) (Mabey, J.) (debtors may pay secured creditors outside of a plan but may not invoke cramdown or discharge of unsecured portion of claim)); *see also In re Clay*, 339 B.R. 784 (Bankr. D. Utah 2006) (Thurman, J.) (*Clay* continues to apply after amendments to the Bankruptcy Code under The Bankruptcy Abuse Prevention and Consumer Protection Act).
[39] *See Ron Pair Enters., Inc.*, 489 U.S. at 241 ("where . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms.") (internal quotations omitted).
[40] *See Leuellen*, 322 B.R. at 652 (Section 1322(b)(8) anticipates surrender); *Cooke*, 655 B.R. at 189 (same).

under § 1325(a)(3).[41] Surrender of collateral also is appropriate treatment of an allowed secured claim under § 1325(a)(5)(C). Finally, and notably, § 1323(c) governing preconfirmation plan modifications, states in relevant part that:

> Any holder of a secured claim that has accepted . . . the plan is deemed to have accepted . . . the plan as modified, unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification, and such holder changes such holder's previous acceptance. . . .

Thus, the Credit Union could have objected to the Debtors' proposed modification, arguing that its allowed unsecured claim could not be discharged. It did not do so.

Issues of fairness have consistently been raised in cases involving post-confirmation vehicle surrender modifications under § 1329. Those rejecting the modification typically look to *Nolan*, where the Sixth Circuit concluded that it was unfair for a secured creditor to take on risk of depreciation of a vehicle after confirmation because the debtor could surrender collateral "when the debtor no longer has any use for the devalued asset."[42] This conclusion not only disregards that secured creditors with interests in vehicles extend credit knowing that their collateral by its very nature is always depreciating in value, but it essentially "turns the code on its head" because it penalizes other unsecured creditors inasmuch as the secured creditor with no collateral is paid a premium.[43] Paying a creditor who no longer has collateral is also contrary to well-established state law property rights.[44]

---

[41] *See, e.g.*, *In re Butler*, 174 B.R. 44, 48 (Bankr. M.D.N.C. 1994) (modification to surrender vehicle disallowed because the debtor was not acting in good faith where it did not have insurance on totaled collateral).
[42] 232 F.3d at 533.
[43] Lundin, § 127.7, at ¶ 11.
[44] *See, e.g., Butner v. United States*, 440 U.S. 48, 55 (1979) (property rights in bankruptcy are determined under state law); *Ballard*, 526 F.3d at 639 ("As the Supreme Court has emphasized, unless the Bankruptcy Code says otherwise, the source of a secured or unsecured claim is state law . . .").

Furthermore, post-confirmation plan modifications allowed under § 1329 make sense from a fairness and feasibility perspective because, as discussed above, Chapter 13 debtors commit to a plan for at least three years and often five years. As stated by one court:

> There is never any money built into a chapter 13 budget for a vacation or car repairs. Who can live like that for five years without some flexibility? The answer is that most debtors cannot. And the Bankruptcy Code recognizes this. It allows debtors to come back to the court to modify the plan when life's unexpected events upset the carefully crafted repayment plan that seemed so "do-able" at the time of confirmation. Section 1329 was Congress' answer to this problem. [45]

### IV. CONCLUSION

The Court concludes that the modification of the Debtor's confirmed Plan to surrender a vehicle and treat the deficiency claim as a general unsecured claim is permissible because it is within the express terms of § 1329(a)(3) and, alternatively, is permitted under the plain language of § 1329(a)(1) and (a)(2).

**—END OF MEMORANDUM OPINION—**

---

[45] *In re Kinney*, No. BR 13-27912 EEB, 2019 WL 7938816, at *5 (Bankr. D. Colo. Nov. 22, 2019), *aff'd*, 5 F.4th 1136 (10th Cir. 2021), *cert. denied*, 143 S.Ct. 302 (2022), *quoted in Cooke*, 655 B.R. at 192 n.5. *See Leuellen*, 322 B.R. at 654 ("Debtors who have difficulty making plan payments should be encouraged to reduce expenses, such as by surrendering a vehicle . . ." rather than dismissal, refiling or conversion) (quoting *Zieder,* 263 B.R. at 118).